## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**KENNETH B. IVY,**

     **Plaintiff,**

**vs.**                         **Case No.  1:16cv317-WTH/CAS**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social**
**Security,**

     **Defendant.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

This is a Social Security case referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of Social Security denying Plaintiff's applications for Social Security Income (SSI) under Title XVI of the Social Security Act (Act) and a period of disability and Disability Insurance Benefits (DIB) under Title II of the Act.  After careful consideration of the record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On December 18, 2012, Plaintiff, Kenneth B. Ivy, filed an application for SSI and DIB, alleging disability beginning December 31, 2010,[1] based on arthritis in the back, ankle, and knee.  Tr. 10, 234-35, 292, 299.[2] Plaintiff meets the insured status requirements for DIB through December 31, 2015.  *Id.*

Plaintiff's applications were denied initially on February 20, 2013, and upon reconsideration on May 13, 2013.  Tr. 10, 69-73, 97-98, 124-50.  On June 4, 2013, Plaintiff requested a hearing.  Tr. 10, 67-68, 156-62.  The Administrative Law Judge (ALJ) Guy Koster, presided over a video hearing from Jacksonville, Florida, and Plaintiff appeared in Gainesville, Florida, represented by Pamela C. Dunmore, an attorney.  Tr. 10, 27-66, 154-55. Plaintiff testified during the hearing.  Tr. 31-61.  Lorin Charles Lovely, an impartial vocational expert, also testified.  Tr. 10, 61-65, 191-92 (Resume).

On February 4, 2015, the ALJ issued a decision and determined Plaintiff was *not* disabled *prior* to February 11, 2013, but became disabled on that date and has continued to be disabled through the date of the ALJ's

---

[1]  At the beginning of the hearing, Plaintiff's representative amended the onset date to October 10, 2011, from December 31, 2010.  Tr. 31, 234, 292; *see infra* at 3, ¶¶ 2 and 3.

[2]  Citations to the transcript/administrative record, ECF No. 14, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

decision.  Tr. 22.  On April 6, 2015, Plaintiff's representative requested

review of the ALJ's decision by the Appeals Council.  Tr. 5.  On August 1,

2016, the Appeals Council denied Plaintiff's request for review of the ALJ's

decision making the ALJ's decision the final decision of the Commissioner.

Tr. 1-4; *see* 20 C.F.R. § 404.981.

On September 30, 2016, Plaintiff filed a Complaint with this Court

seeking review of the ALJ's decision.  ECF No. 1.  The parties filed

memoranda of law, ECF Nos. 26 and 27, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. "The claimant has not engaged in substantial gainful activity since
   the alleged onset date."  Tr. 12.

2. "Since the alleged onset date of disability, December 31, 2010, the
   claimant has had the following severe impairments: osteoarthritis
   of the lumbar spine, right ankle, and right knee, obesity, hearing
   loss, history of cocaine abuse (in sustained remission)."  *Id.*

3. "Since the alleged onset date of disability, December 31, 2010, the
   claimant has not had an impairment or combination of impairments
   that meets or medically equals the severity of one of the listed
   impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 13.

4. "After careful consideration of the entire record, the undersigned
   finds that *prior* to February 11, 2013, the date the claimant
   became disabled, the claimant had the residual functional capacity
   [RFC] to perform light work as defined in 20 CFR 404.1567(b) and
   20 CFR 404.967(b), except the claimant can occasionally climb
   ramps/stairs, occasionally bend and crawl but cannot climb
   ladders, ropes, or scaffolds.  The claimant must avoid hazards

such as unprotected heights and dangerous machinery. The claimant must use a hearing aid, and is limited to work around a moderate noise environment." Tr. 13.

5.  "After careful consideration of the entire record, the undersigned finds that beginning on February 11, 2013, the claimant has the [RFC] to perform a narrow range of light work as defined in 20 CFR 404.1567(b) and 20 CFR 416.967(b) except the claimant can only stand and/or sit for no more than 2 hours in an 8-hour workday; the claimant can occasionally climb ramps/stairs, occasionally bend and crawl. The claimant cannot climb ladders, ropes, or scaffolds and must avoid hazards such as unprotected heights and dangerous machinery. The claimant must use a hearing aid, and is limited to work around a moderate noise environment." Tr. 19. The ALJ noted that on February 11, 2013, Robert A. Greenberg, M. D., examined Plaintiff at the request of the Division of Disability Determinations. "Based on his findings, Dr. Greenburg [sic] felt that the claimant would be unable to perform work-related activities that require prolonged standing, walking, heavy lifting, or bending (Exhibit 3F)."[3] *Id.* The ALJ concluded this section of his decision: "The claimant's examination with Dr. Greenburg [sic] clearly noted decreased lumbar range of motion and flexion was decreased of the right ankle. The claimant also exhibited no edema upon examination. It is clear that the claimant would be *limited to sedentary work*, which directs a finding of disabled *after* the established onset date."[4] Tr. 20.

6.  "Since December 31, 2010, the claimant has been unable to perform any past relevant work." *Id.*

7.  "Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. The claimant's age

---

[3] The ALJ misspelled Dr. Greenberg's name as Dr. Greenburg. Tr. 19-20; *see* Tr. 1142.

[4] Plaintiff accepts ALJ Koster's findings, Tr. 19-20, regarding Dr. Greenberg's assessment of Plaintiff's functional ability and the ALJ's ultimate conclusion that Plaintiff became disabled at least on February 11, 2013. ECF No. 26 at 7-9. The issue before the Court is whether the ALJ erred when he determined that Plaintiff was not disabled *prio*r to February 11, 2013.

category is not changed since the established disability onset date."  *Id.*  The claimant has at least a high school education and is able to communicate in English.  *Id.*  "Beginning on February 11, 2013, the claimant has not been able to transfer job skills to other occupations."  *Id.*

8.   "Prior to February 11, 2013, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed."  Tr. 20.  The vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as ticket seller, ticket taker, and office helper all with light exertion, unskilled, with an SVP of 2.[5]  Tr. 21; *see* Tr. 63-65.

9.   "Beginning on February 11, 2013, considering the claimant's age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 21.  The ALJ further stated:

> To determine the extent to which these [exertional and/or non-exertional] limitations eroded the unskilled light occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC].  The vocational

---

[5]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  A Specific Vocational Preparation (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1 and 2.  SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

expert testified that given all of these factors the individual would be limited to performing sedentary work and does not have any transferable skills to such work.

Even if the claimant had the [RFC] for the full range of sedentary work, a finding of "disabled" is directed by Medical-Vocational [the Grids] Rule 201.14.

*Id.*

Thus, even though the ALJ determined that Plaintiff has the RFC to perform a narrow range of light work beginning on February 11, 2013, Tr. 19, the onset date of disability, the ALJ ultimately determined that Plaintiff's exertional and nonexertional limitations were such that the unskilled light occupational base, for which he was capable of performing prior to February 11, 2013, Tr. 20-21, was eroded to the extent that Plaintiff was disabled under Medical-Vocational Rule 201.14, after February 11, 2013.  Tr. 21.  Rule 201.14 pertains to an RFC to perform sedentary work as a result of severe medically determinable impairment(s).  Rule 201.14 provides that a person closely approaching advanced age (50-54), here Plaintiff, who has at least a high school education that did not provide for direct entry into skilled work, whose previous work experience involved skilled or semiskilled-skills that are not transferable, is disabled.  Conversely, as noted above, the ALJ determined that "[p]rior to February 11, 2013, a finding of "not disabled" is therefore appropriate under the framework of the above-cited rule [Rule 202.14] in the Medical-Vocational Guidelines [Rule 202.14]."  Tr. 21 (emphasis added).  (Rule 202.14 pertains to a person with an RFC to perform limited to light work as a result of severe medically determinable impairment(s).)

10.  "The claimant was not disabled *prior* to February 11, 2013, but became disabled on that date and has continued to be disabled to the date of this decision."  Tr. 22 (emphasis added).

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  Moore, 405 F.3d at 1211.[6]

---

[6] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement).[7] Both the "impairment" and the "inability" must be

---

[7] The relevant DIB and SSI regulations are virtually identical. As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise. The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g., 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

expected to last not less than 12 months. <u>Barnhart v. Walton</u>, 535 U.S. 212

(2002). In addition, an individual is entitled to DIB if he is under a disability

prior to the expiration of his insured status. *See* 42 U.S.C.

§ 423(a)(1)(A); <u>Moore v. Barnhart</u>, 405 F.3d at 1211; <u>Torres v. Sec'y of

Health & Human Servs.</u>, 845 F.2d 1136, 1137-38 (1st Cir. 1988); <u>Cruz

Rivera v. Sec'y of Health & Human Servs.</u>, 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps. 20 C.F.R.

§ 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[8]

---

[8] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996, rescinded eff. Mar. 27, 2017) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g). An ALJ may make this determination either by applying the grids or by obtaining the testimony of a vocational expert. Phillips, 357 F.3d at 1239-

---

all the evidence."). The Court will apply the SSR in effect when the ALJ rendered his decision. *See generally* Bagliere v. Colvin, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

40; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim.  *See* 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211.

## IV.  Legal Analysis

### I.

Plaintiff agrees with the ALJ's determination that Plaintiff is disabled, but disagrees when he became disabled.  ECF No. 26 at 22-34.  Plaintiff, argues he became disabled sometime between December 31, 2010, the alleged onset date set forth in his applications (rather than the amended alleged onset date of October 10, 2011, Tr. 41), and February 11, 2013, the onset disability date determined by the ALJ.  ECF No. 26 at 34.  Plaintiff states that

> [t]here are 792 days between December 31, 2010, plaintiff Ivy's alleged onset date, and February 11, 2013, the onset date chosen by ALJ Koster.  Only one of those days is the correct onset date.  And, whereas it should be open and obvious that the correct onset date is not February 11, 2013, it is equally not obvious with [sic] the correct date is.  In order to fully and fairly develop the record and determine the correct onset date, prior to February 11, 2013, a remand for the taking of testimony of a medical expert will be necessary.

ECF No. 26 at 34. Thus, Plaintiff argues that the ALJ erred in choosing February 11, 2013, as the onset date for Plaintiff's disability. For Plaintiff, the remedy is to remand the case to ALJ Koster (without vacating his current decision finding Plaintiff disabled starting February 11, 2013) "and only for the specific purpose of determining whether some other date, prior to February 11, 2013, is the proper onset date." ECF No. 26 at 35.

## II.

Plaintiff begins his argument by alleging that ALJ Koster violated SSR 83-20, 1983 SSR LEXIS 25 (1983) when he established Plaintiff's onset date of disability as February 11, 2013. ECF No. 26 at 22-31. (Plaintiff refers to SSR 83-20 extensively. *Id.*)

After discussing SSR 83-20, Plaintiff refers to the ALJ's findings regarding Dr. Greenberg and states that "[t]he substantial evidence in this matter fully supports ALJ Koster's finding that plaintiff Ivy is disabled by osteoarthritis." ECF No. 26 at 33. Plaintiff's "Statement of Case" provides a procedural history of the matter, some of the ALJ's findings, and a brief, but incomplete statement of the vocational expert's testimony. Plaintiff's "Statement of the Facts" refers to Dr. Greenberg's findings and patient records post-Dr. Greenberg's findings, a reference to VA records that are not helpful to Plaintiff, and mention that radiological records could not be

found.  ECF No. 26 at 4-10.  The argument portion of Plaintiff's

memorandum sheds little light on the ALJ's findings pertaining to his

determination that Plaintiff was not disabled prior to February 11, 2013.

ECF No. 26 at 22-34.

The ALJ made numerous findings in support of his RFC

determination that Plaintiff was not disabled prior to February 11, 2013, and

had the RFC to perform light work.  Tr. 13-19.  The ALJ began his

discussion with Plaintiff's hearing testimony.  Tr. 13-14.  The ALJ

determined that Plaintiff's "statements concerning the intensity, persistence

and limiting effects of [his] symptoms are not entirely credible prior to

February 11, 2013, for the reasons explained in this decision."  Tr. 14.

The ALJ then summarized the medical evidence of record for over

four pages in his decision.  Tr. 15-19.  Plaintiff does not discuss this

information, ECF No. 26, yet suggests that the case should be remanded

so that a medical expert can evaluate the medical evidence and determine

when Plaintiff became first disabled.  *Id.*

Social Security Ruling 83-20 does not mandate that an ALJ consult a

medical expert even when disability onset date must be inferred due to

inadequate medical records.  Even if SSR 83-20 establishes such a

mandate, it would not apply here because the ALJ had adequate medical

records to determine Plaintiff's disability onset date.

> Although Social Security Rulings are not binding, we accord the
> rulings great respect and deference if the underlying statute is
> unclear and the legislative history offers no guidance. <u>B. B. ex rel. A.
> L. B. v. Schweiker</u>, 643 F.2d 1069, 1071 (5th Cir. 1981). Social
> Security Ruling 83-20, 1983 SSR LEXIS 25 prescribes the policy and
> procedure by which the Commissioner should determine the onset
> date of a disability. *See* SSR 83-20, 1983 SSR LEXIS 25. It defines
> the onset date as "the first day an individual is disabled as defined in
> the Act and the regulations." SSR 83-20, 1983 SSR LEXIS 25. "In
> addition to determining that an individual is disabled, the
> decisionmaker must also establish the onset date of disability," which
> may be critical to determinations such as the period for which the
> individual will be paid. *Id.*

<u>Caces v. Comm'r Soc. Sec. Admin.</u>, 560 F. App'x 936, 938 (11th Cir. 2014)

(unpublished) (citation omitted). "The plain language of SSR 83-20, 1983

SSR LEXIS 25 indicates that it is applicable only after there has been a

finding of disability and it is then necessary to determine when the disability

began. *See* <u>CBS Inc. v. PrimeTime 24 Joint Venture</u>, 245 F.3d 1217,

1224-25 (11th Cir. 2001) (noting that in construing a statute, we look to the

plain meaning of the actual language)." <u>Caces</u>, 560 F. App'x at 939.

SSR 83-20 explains that "medical reports containing descriptions of

examinations or treatment of the individual are basic to the determination of

the onset of disability" and that "[t]he medical evidence serves as the

primary element in the onset determination." 1983 SSR LEXIS 25, at * 5.

SSR 83-20 states, however, that determining an onset date may be difficult when the alleged onset date is far in the past and adequate medical records are not available.  *Id.* at *5-6.

SSR 83-20 provides an example of a situation requiring an ALJ to infer disability onset date when their inadequate medical records.  *Id.* at *6-7.  The example describes a claimant alleging disability due to a leg impairment and the only medical evidence is a single record for nearly a year after the alleged onset date, which shows the claimant has an impairment that is so severe it meets the listings.  *Id.* at *8.

If the medical evidence is inadequate and the disability onset date must be inferred, SSR 83-20 provides that an ALJ "should" consult a medical advisor at the hearing.  *Id.*

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.  If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

*Id.* at *6-7.

The Commissioner has clarified that SSR 83-20 does not require an ALJ to consult a medical expert even if the disability onset date must be inferred.  ECF Nos. 27 at 8 and 27-1 referring to "Emergency Message: Clarification of [SSR] 83-20-Titles II and XVI: Onset of Disability, available at TTPS://secure.ssa.gov/apps10/reference.nsf/links/10172016104408AM," (last visited July 13, 2017).  The Commissioner explained "the decision to call on the services of a medical expert when onset must be inferred is always at the ALJ's discretion." *Id.*

Notwithstanding, the ALJ had adequate medical records to determine Plaintiff's disability onset date.  A medical expert should be called when an ALJ can "reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working."  SSR 83-20, SSR LEXIS 25, at *6.  SSR 83-20 suggests the use of a medical expert when the medical evidence is ambiguous.  *See* Caces, 560 F. App'x at 939.

Here, the medical evidence is not ambiguous and the ALJ had ample records to determine Plaintiff's disability onset date.[9]  Tr. 15-20.  For

_____

[9]  The ALJ observed that Plaintiff's activities in 2011 at 2012 did not show a disabling condition.  Tr. 14-18.

example, the VA records dated February 9, 2012, report that an

"examination of [Plaintiff] back was absolutely normal.  No motor or sensory

deficits.  Very poorly elicited reflexes.  No pathological reflexes.  2+ edema

of lower limbs up to the knee."  Tr. 15, 947-51.  At that time, imaging

studies showed mild degenerative lumbar spondylosis, which have

progressed since Plaintiff's prior examination.  Tr. 15, 951, 1132.

In March 2012, an examination showed Plaintiff was neurologically intact

and his motor functions were 5/5 bilaterally in the upper and lower

extremities.  Tr. 15, 525.  On August 9, 2012, Plaintiff reported he was

"doing okay"; taking his prescribed medications; "watching his diet and

exercises by walking."  Tr. 15, 800.  The ALJ observed that a physical

examination was generally unremarkable.  Tr. 15, 801-02.

After discussing patient records through October 29, 2012, some of

which are discussed above, the ALJ observed:

> The undersigned has reviewed the medical evidence of record
> and found no evidence of a disability prior to the established
> onset date of February 11, 2013.  In terms of the claimant's
> alleged hearing loss, the objective medical evidence does not
> suggest the claimant's symptoms are work preclusive.  October
> 2012 testing demonstrated normal tympanic membrane, ear
> canal, and auricle bilaterally.  The claimant's audiology testing
> demonstrated marked conductive loss in the right ear.  This was
> confirmed with tuning forks; weber to the right ear and there was
> positive rinne (Exhibit 2F/[47-]49).  The claimant's hearing deficits
> are managed with the use of his hearing aid, and do not preclude
> him from all work activity.

> In terms of the claimant's disorders of the spine joints, the objective medical evidence does not suggest his symptoms are work preclusive. The claimant's back examination was absolutely normal. There were no motor or sensory deficits. There were very poorly controlled elicited reflexes and no pathological reflexes. Edema was 2+ of lower limbs up to the knee (Exhibit (Exhibit 1F/223-227). A March 2012 examination demonstrated he was neurologically intact. Motor functions were 5/5 bilaterally in the upper and lower extremities, proximal. His deep tendon reflexes were within normal limits (Exhibit 1F/205, 2F/201-204). Diagnostic studies have been largely unimpressive. Physical examination was negative for any edema. The claimant's deep tendon reflexes were within normal limits (Exhibit 2F/78). X-rays of the lumbar spine revealed mild multilevel degenerative lumbar spondylosis (Exhibit 1F/223-227, 2F/224)). The evidence reveals rather mild findings, which demonstrates his ability to perform work within the above residual functional capacity.

Tr. 16. The ALJ determined that "the objective medical evidence does not suggest" Plaintiff's "adjustment disorder" is severe, having discussed relevant patient records. *Id.* After discussing medical evidence relating to Plaintiff's "adjustment disorder," Tr. 16, the ALJ then returned to a discussion of Plaintiff's exercise activities prior to his established onset date and noted:

> Prior to his established onset date, the claimant was noted to engage in exercise. Progress notes from March 2012 reveal that the claimant's hobbies included walking and reading. He also reported to providers that he was watching his diet and exercising by walking some (Exhibit 1F/200-205). June 2012 progress notes documents that the claimant was involved in a leisure fitness programs. He engaged in strength exercise without any complaints of pain or excess. He was doing very well, as the claimant was going to be

transitioned to the Health Promotion Program to attend the fitness center two times weekly.  He attended 75 percent of his sessions and maintained exercise for 60 minutes each session.  He went up on his weight limit (Exhibit 2F/144-146).  His circuit entailed cardio on the treadmill for 15 minutes and completes circuits on weight machines on 13 machines for 15 repetitions and dumbbells for 15 repetitions, and flexibility exercises (Exhibit 2F/147, 183).  He reportedly engaged in 20-29 minutes for moderate physical activity and 10 to 19 minutes of vigorous activity (Exhibit 2F/188).  The record was very specific as to his activity levels, which he denied at hearing.  Clearly, the claimant has not been fully credible with regards to his activities.

Tr. 17.

The ALJ then discussed Plaintiff's reports of looking for work, which also detracted from an earlier onset date of disability.  *Id.*  Thus, the ALJ had records of Plaintiff's physical activities in the period contemporaneous with his established onset date.  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).

The ALJ considered the RFC conclusions reached by the physicians employed by the State Disability Determination Services that, according to the ALJ, supported a finding of not disabled prior to February 11, 2013.  Tr. 18.

The ALJ concluded this portion of his decision stating:

The claimant did not stop working due to any impairment, but rather stopped working after a misunderstanding (Exhibit 2F/216). He also engaged in many activities that are contradictory to a finding of disabled. As mentioned earlier, the record notes that the claimant was walking considerable distances in 2011 (Exhibit 2F/353) and exercising in a fitness program in April 2012 (Exhibit 2F/188) despite his denial at hearing. The record is void of any disabling condition. In sum, the above residual functional capacity assessment is supported by the undersigned's thorough review of the medical evidence of record and the state agency assessments. Accordingly, the undersigned finds that the claimant's abilities are well within the above residual functional capacity.

Tr. 18-19.

As noted above, on February 11, 2013, Dr. Greenberg, a consultative examiner, examined Plaintiff and reported abnormalities that were not noted by Plaintiff's treating physicians in 2012. For example, Dr. Greenberg observed Plaintiff walked with a right leg limp, that he had pain on range of motion testing of the lumbar spine and that straight leg testing was positive. Tr. 1144. Plaintiff's left knee was tender to palpation and his right knee had a decreased range of motion. *Id.* Substantial evidence supports the ALJ's determination of Plaintiff's disability onset date based on objective medical evidence that was contemporaneous with Plaintiff's established onset date.

Unlike the example in SSR 83-20, the ALJ had ample medical evidence proximate to Plaintiff's established onset date. In the example

provided by SSR 83-20, and ALJ had only a single medical record from a year after the alleged onset date.  Here, the ALJ had adequate records concerning Plaintiff's osteoarthritis, including numerous physical examinations in 2012 and records documenting Plaintiff's ability to engage in significant physical activities.  Under the facts of this case, SR 83-20 does not require a remand.  *See* Caces, 560 F. App'x at 939; *see also* Carter v. Colvin, 569 F. App'x 687, 691 (11th Cir. 2014) (unpublished).

Plaintiff did not carry his burden to demonstrate that the ALJ erred in setting his onset of disability date.  Even if this Court disagrees with the ALJ's resolution of the factual issues and would resolve those disputed factual issues differently, his decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole.  *See* Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

## V.  Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's finding that Plaintiff was not disabled *prior* to February 11, 2013, but became disabled on that date and has continued to be disabled to the date of the ALJ's decision.  Accordingly, pursuant to 42 U.S.C § 405(g), it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits be **AFFIRMED**.

**DONE AND ORDERED** at Tallahassee, Florida, on July 19, 2017.

s/ Charles A. Stampelos_____
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.